DORÉ, Judge.
Plaintiff, who is engaged in the Butane gas business in Independence, Tangipahoa Parish, Louisiana under the trade name of the Higher Tañe Gas Company, brings this suit against the defendant, the Illinois Central Railroad Co., a foreign corporation authorized to do and doing business in the State of Louisiana, seeking to recover of the defendant the sum of $434.47 based upon the following allegations:
Plaintiff alleges that the Beacon Petroleum Company, a dealer in petroleum products of Tulsa, Oklahoma, shipped him 9528 gallons of butane gas, via the defendant, in tank car HHCX16; that on arrival of the tank car in Independence on March 30, 1948, he, accompanied by one of his employees, a Mr. Lyle Dickson, upon inspecting the tank car, found the tank car to be leaking at the filler valve, the relief valve and the bleeder valve; that upon gauging the contents of said car, he found the said car to be 3950 gallons short of the number of gallons for which the bill of lading called for; that he refused to accept the said car, after calling the then station agent’s attention to the leakage and the shortage; but, upon the exhortation of the said agent that the defendant company would make the necessary adjustments if he accepted the same, he accepted the shipment, paying the freight charges of $272.46 on April 1, 1948, and subsequently paid the Beacon Petroleum Company the full price of their invoice; that the then market price to him, federal excise tax included, was $.0825 per gallon, and considering the shortage of 3950 gallons at that price, the loss amounted to $325.85, and the overpayment of freight on said shortage was the amount of $108.62, making the whole amount of his loss $434.47, the amount demanded in the suit; that he did detrimentally rely upon the said station agent’s war *435 ranty and that but for this reliance he would not have suffered this loss as he would not have accepted the shipment, nor paid the Beacon Company for same.
In the alternative, he avers that the said loss in truth and in fact was caused solely by defendant’s failure to take the proper precautions in transporting said shipment and that therefore by virtue of its contract as common carrier, the defendant is liable to him, and that, if lack of care is found to have been taken by the carrier originating shipment, the defendant is still liable as the terminal carrier under the law.
He avers amicable demand without avail and reserves his rights, if any, against the Beacon Petroleum Company.
As to the main demand, the defendant in its answer, after admitting that it was a foreign corporation authorized to do and doing business in the State of Louisiana and amicable demand made without avail, denied outright, or for lack of sufficient information upon which to base a belief, all of the remaining allegations of plaintiff’s petition.
Upon these issues, the case was duly tried, resulting in a judgment in plaintiff’s favor and against the defendant in the sum of $434.47, with interest from judicial demand and costs. Defendant has appealed.
From the pleadings as set out above, the case, in our opinion, presents purely a question of facts, and the question to be principally decided is whether plaintiff has borne the burden of proof.
The record in our opinion, fully justifies a statement of the following facts:
On March 25, 1949, the Beacon Petroleum Company shipped from Houston, Texas, to plaintiff, under his trade name, at Independence, La., a certain tank car, initialed HHCX, car No. 16, via defendant’s railway, presumably containing 9528 gallons of butane gas, of the value of $700.83. This tank car was spotted on the spur track of plaintiff at Velma, two miles north of Independence, by the employees of defendant company, on the afternoon of March 30, 1948. Plaintiff’s spur track was under the jurisdiction of the local agent of defendant company at Independence. The plaintiff was in urgent need of the butane gas within this tank and had so notified the defendant’s agent at Independence.
There is a conflict in the evidence as to the time and day that the agent notified the plaintiff of the arrival and spotting of this car. The plaintiff and his employee are not certain as to the day and date of the notification, by defendant’s agent, but are certain that, since they were in urgent need of the gas, they, immediately upon notification of the arrival of the said tank car, visited the tank car. It is the gist of their testimony that the notification of the spotting and delivery of the tank car was on the morning of March 31, 1948, while it is the testimony of defendant’s agent that the notification of the arrival and spotting of the car was immediately after its arrival on the evening of March 30, 1948. Be that as it may, from the judgment rendered by the lower court, the trial judge evidently believed the testimony of plaintiff that the notification was made on the morning after the arrival of the tank car. We cannot find manifest error in this finding of fact.
The testimony of the plaintiff and his employee is that upon a visit to the tank car it was disclosed that the said tank car was leaking around the filler, the relief and bleeder valves, ice having congregated around the valves. Plaintiff immediately notified the defendant’s local agent of that fact, offering to the said agent transportation to and from the tank car from the local station, for the purpose of inspecting the tank car and in unloading the car, which offer was declined by defendant’s agent on account of lack of time. However, defendant’s agent did authorize and direct the plaintiff to break the seals of the tank car, “proceed to unload the car as quick as he could do to save any further leak” and “estimate what loss was and that there might be some adjustment could be made”. Pursuant to the authorization of defendant’s agent, plaintiff and his employee broke the seals, and proceeded to ascertain the gas shortage, using two methods; By using the “slip tube” showing the amount of gas still in the tank and by *436 unloading the gas into plaintiff’s truck and gauges thereon indicating the amount of contents after the unloading.
The defendant, in oral argument and in brief, contends that since the tank car was delivered on plaintiff’s spur at Velma on the evening of March 30, 1948, plaintiff was immediately notified thereof, and plaintiff made no effort to unload the tank car before April 1, 1948, the day he paid the freight thereon, plaintiff had had possession of the tank car for over two days and that if any leakage occurred it was during this interval of time and defendant is not liable therefor. We are unable to agree wtih this contention for the reason that, outside of the fact that plain-riff paid the freight thereon on April 1, 1948, we fail to find the facts as stated by the defendant.
The plaintiff relies on the rule of res ipsa loquitur to show presumption of negligence on behalf of defendant. The plaintiff has satisfactorily shown that when he received the shipment the tank car was leaking. The only evidence to rebut the presumption that this leakage occurred while in defendant’s possession is the testimony of defendant’s conductor who “spotted” the tank car. His testimony is that he picked up this car at Ponchatoula on March 30, 1948, switched the car at Hammond and spotted it at Velma. Of course, as could be expected, he testified that the tank car did not receive any rough handling, that he inspected the car at Ponchatoula and at Velma and found no leakage anywhere or indication thereof. However, his examination of the tank car, if any, appears to have been a casual or superficial one and his testimony is not impressive. Furthermore, there is no proof that prior to the tank car reaching and being picked up at Ponchatoula, the said tank car had not received any rough handling to cause the valves to leak, and again the distance from Ponchatoula to Velma seems to be a short distance. Considering the amount, practically a third of the tank car, of gas alleged to have escaped, leads us to the conclusion that the gas had been escaping for more than two days as contended by defendant. The defendant has failed, with satisfactory evidence to rebut, the presumption that the leakage occurred during its possession of the tank car or while in transit.
From the above and foregoing, we are of the opinion that plaintiff has borne the burden of proof in establishing that plaintiff purchased from the Beacon Petroleum Company a tank load of butane gas, for which he paid the sum of $700.83, and on which he paid $272.46 as freight charges, making a total of $973.29; that when the tank car was delivered to him at Independence, La., the said tank car was leaking at the filler, the relief and the bleeder valves and that the defendant had failed to absolve itself of any negligence, and therefore it was liable for any shortage of gas therein and its value.
The next question which presents itself is whether plaintiff has borne the burden of proof showing the gallonage of the tank car at the time of shipment. In order to show such gallonage, he only offered the way-bill. It is the contention of the defendant that this is insufficient in that the shipment was one which is customarily referred to as “shipper’s load and count” and is not binding on it as to the contents.
United States Code Annotated, Title 49, Section 101, provides: “Loading by shipper; contents of bill; ascertainment of kind and quantity on request. When package freight or bulk freight is loaded by a shipper and the goods are described in a bill of lading merely by a statement of marks or labels upon them or upon packages containing them, or by a statement that the goods are said to be goods of a certain kind or quantity, or in a certain condition, or it is stated in the bill of lading that packages are said to contain goods of a certain kind or quantity or in a certain condition, or that the contents or condition of the contents of packages are unknown, or words of like purport are contained in the bill of lading, such statements, if true, shall not make liable the carrier issuing the bill of lading, although the goods are not of the kind or quantity or in the condition which the marks or labels upon them indicate^ or of the kind or quantity or in the condition they were said to be by the con *437 signor. The carrier may also by inserting in the bill of lading the words ‘Shipper’s weight, load, and count,’ or other words of like purport indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading: Provided, however, Where the shipper of bulk freight installs and maintains adequate facilities for weighing such freight, and the same are available to the carrier, then the carrier, upon written request of such shipper and when given a reasonable opportunity so to do, shall ascertain the kind and quantity of bulk freight within a reasonable time after such written request, and the carriers shall not in such cases insert in the bill of lading the words ‘Shipper’s weight,’ or other words of like purport, and if so inserted contrary to the provisions of this section, said words shall be treated as null and void and as if not inserted therein. (Aug. 29, 1916, c. 415, § 21, 39 Stat. 541.)”
This shipment was a “Shipper’s load and count” and being an interstate shipment is governed by the provision quoted supra. Under this provision, the onus of proving the contents of the tankcar at the time of the shipment, besides the way-bill, was upon the plaintiff. Plaintiff has failed to 'do so. However, considering the fact that plaintiff, in our opinion, has a valid claim against the defendant, we do not feel that he should be penalized because of insufficient proof which appears to be available, and which was not produced because of a sincere belief that the way-bill was sufficient, and exercising our discretion vested in us by Article 906 of the Code of Practice, we deem it in the ends of justice to remand this case to the lower court in order to permit plaintiff to definitely establish the exact contents of the said car at the time of shipment and the number of gallons short at the time of delivery, the value of the gallonage short being only a matter of mathematical calculation.
For these reasons, the judgment appealed from is annulled, reversed and set aside. It is now ordered that this case be hereby remanded to the Twenty-first Judicial District Court for the Parish of Tangipahoa, there to be proceeded with in accordance with the views herein expressed. All costs to await the final disposition of the case.